UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IRA ZICHERMAN and BRENDA ZICHERMAN,

Plaintiffs,

-against-

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.

**MEMORANDUM & ORDER**
**23-CV-2725 (NGG) (JRC)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Ira and Brenda Zicherman bring this action against their insurer, Defendant State Farm, for breach of contract, and seek punitive damages, consequential damages, and attorney's fees.[1] (*See generally* Compl. (Dkt. 1, Exh. 1).) State Farm moved to dismiss or strike the Zichermans' allegations pertaining to violations of the implied covenant of good faith and fair dealing, violations of New York State Insurance Law § 2601, bad faith conduct, and claims for punitive damages, consequential damages and attorneys' fees. (*See* Def. Mot. to Dismiss (Dkt. 9).) State Farm's motion to dismiss with respect to the claim for punitive damages is GRANTED without prejudice. State Farm's motion is DENIED on the remaining grounds.

## I. FACTUAL BACKGROUND

The Zichermans live in a home in Brooklyn. (Compl. at ¶ 4.) As homeowners do, they had an insurance policy to cover damage—here, with State Farm. (*Id.*) On February 12, 2021, the Zichermans' home had a plumbing failure that caused extensive

[1] The following allegations are taken from the Zichermans' Complaint. At the motion to dismiss stage, the allegations in the Complaint are assumed to be true. *See Louisiana Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, 701 F.3d 39, 42 (2d Cir. 2012).

damage. (*Id.* at ¶ 5.) Luckily for the Zichermans, a couple in their golden years with health problems, their insurance policy covered water damage. (*Id.* at ¶¶ 4, 12.) So they did what they thought they were supposed to do: they promptly filed a claim with State Farm. (*Id.* at ¶ 6.) They provided pictures and videos of the water damage. (*Id.* at ¶ 7.) They had independent evaluators assess the total damage. (*Id.* at ¶ 8.) And then they waited. (*Id.* at ¶¶ 15-18.)

Eight weeks later, State Farm came to inspect their water damaged property. (*Id.* at ¶ 15.) Five weeks and a complaint with the New York Insurance Department after that, State Farm provided them with the inspector's report. (*Id.* at ¶ 18.) Three months after the Zichermans' home suffered extensive flooding, State Farm said they would not negotiate unless the Zichermans allowed a new builder to take over and restart the rebuilding process. (*Id.* at ¶ 25.) State Farm also reneged on an advance promised days before the negotiations began and proceeded to offer the Zichermans an amount that was less than half of the amount that the independent evaluator had assessed. (*Id.* at ¶¶ 26-29, 31-33.) The Zichermans then brought suit to recover what they allege they were owed under their insurance policy. (*Id.* at ¶ 30.)

## II. LEGAL STANDARD

Defendant State Farm moves to dismiss the Zichermans' Complaint under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## III. DISCUSSION

The Zichermans allege an express breach of contract for failure to cover the insured losses they suffered and seek compensatory damages. (Compl. at ¶ 40.) State Farm does not contest this claim at this stage. (*See* Def. Mot. to Dismiss.) The Zichermans also allege a breach of contract based on State Farm's violation of the covenant of good faith and fair dealing, and they seek consequential damages, including attorneys' fees, and punitive damages as a result of the breach. (Compl. at ¶¶ 46, 49)

### A. Implied Covenant of Good Faith and Fair Dealing

A breach of the implied covenant of good faith and fair dealing is a breach of contract. *See Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011). The substance of the covenant includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" in the contract. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). Consumers buy insurance to cover their losses, but they also "bargain for peace of mind, or comfort, of knowing that [they] will be protected in the event of a catastrophe." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 194 (2008).

The timing of a payment and ease with which the insured can access the payment to which they are entitled are relevant for determining whether an insurer has fulfilled the obligations of its contract. *See id.* at 195-96. After all, a payment made in full but three years too late is of little use for the insured who bought

insurance to smooth consumption and mitigate the negative impact of a calamity. That is three years where the insureds are without the bargained-for "peace of mind." *Id.* at 194.

The Zichermans allege a breach of the covenant of good faith based on more than just the untimely processing of their claim. The Zichermans' allegation that State Farm failed to pay policy proceeds in a timely manner is one component of their allegation that State Farm exercised undue pressure to force the insureds into settling their claim. (Compl. at ¶¶ 42, 47.) When someone buys an insurance policy, he or she is buying protection against a catastrophe; a reasonable person would expect a contract that includes peace of mind as consideration to prohibit tactics that pressure an insured who has suffered an unexpected loss to then settle for less than the value of their claim.

Specifically, State Farm delayed processing the claim. (Compl. at ¶¶ 15, 17-18.) State Farm then gave a low-ball offer. (Compl. at ¶¶ 20-22, 27.) After beginning negotiations, State Farm stopped negotiating and required a new builder to start over, all while refusing to turn over their findings to the Zichermans. (Compl. at ¶¶ 19, 23-25.) State Farm also reneged on an advance. (Compl. at ¶ 26.) Accordingly, the Zichermans have pleaded a violation of the covenant of good faith and fair dealing based on facts that are distinct from the underlying breach of contract. State Farm's motion to dismiss the claim of a violation of the covenant of good faith and fair dealing is DENIED.

### B. Consequential Damages

New York state law allows recovery of consequential damages for "those risks foreseen or which should have been foreseen at the time the contract was made." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192-93 (2008). In assessing whether the parties reasonably contemplated consequential

damages, the court looks to "the nature, purpose and particular circumstances of the contract." *Id.* at 193.

The Zichermans bought an insurance contract to cover water damage at their residence. (Compl. at ¶ 4.) A house is a unique asset in that it acts as both a store of value and a durable good. The dual nature of housing assets is relevant for understanding the nature and purpose of homeowners' insurance. When an asset is a store of value, the asset's valuation is stable such that the owner can use the asset as a vehicle for saving or accruing wealth. When an asset serves as a durable good, as housing does, it also derives its value from the owners' consumption of the good. Stated more plainly, homeowners value their homes both as a savings account and as a place to live. Accordingly, an insurance contract to protect against water damage in a primary residence would, under the circumstances, be properly understood to protect both of these interests.

The Zichermans seek two forms of consequential damages. First, they seek damages for living expenses that they allege they spent as a result of State Farm's bad faith delay in processing their claim. (*Id.* at ¶ 31.) Second, they seek attorneys' fees, [2] alleging that State Farm's conduct compelled the Zichermans to file suit in order to recover what they were owed under their contract. (*Id.* at ¶¶ 48-49.) The two are addressed in turn.

1. Living Expenses

The Zichermans seek $6,000 for living expenses that they incurred as a result of State Farm's delay in processing their claim.

---

[2] Attorneys' fees are analyzed as a category of consequential damages, rather than separately, because the Zichermans allege that the bad faith conduct involved undue pressure to settle by requiring the insureds to bring suit in order to recoup the value of their insurance policy. While organized in this way for clarity, the analysis concerning the appropriateness of awarding attorneys' fees is unchanged.

(*Id.* at ¶ 31.) A homeowner values a house as a place to live. Had State Farm promptly dealt with the claim, then the Zichermans could have used their home as a place to live. State Farm did not promptly adjust and pay the Zichermans for the loss, so the Zichermans may recover damages incurred as a result of the breach.

The court's decision in *Bi-Economy* is instructive. 10 N.Y.3d 187. In *Bi-Economy*, a company bought business interruption insurance. *Id.* at 191. Business interruption insurance allows a company to continue receiving income in the immediate aftermath of an accident so that operations can continue. *Id.* at 194-95. Because a business loss can create a downward spiral that harms the ability of a business to reinvest and operate in the future, a timely payout is crucially important. *Id.* at 195. A payout that was too late to prevent the failure of the business was a breach of the contract because it was ineffective at providing coverage to prevent the harm it was contracted to prevent. *Id.* Because the insurer did not promptly pay the insured, the court found that the insured could recover consequential damages when the business subsequently failed. *Id.* at 195-96.

In the present case, the Zichermans bought insurance that covered water damage in order to both protect the value of their home and their capacity to live in their home. As a primary residence, the Zichermans' home was not a purely economic asset. An insurance payment in full that is late will still fully make whole a loss in value in the home, but it will cause damage to the homeowners' ability to live in their home. Because the delay in processing the claim caused an injury that should have been foreseeable at the time of contracting for insurance for a residence, State Farm's motion to dismiss the Zichermans' claim for consequential damages is DENIED.

2. Attorneys' fees

As a general rule, an insured may not recover attorneys' fees that occur as a result of an affirmative action against an insurer to establish the insurer's rights and obligations under the policy. *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995) ("*NYU*"). However, there exists an exception to the general rule for allegations of bad faith. When the insurer has "no arguable basis to challenge [the insured's] claim and [the insured] can further show that no reasonable carrier would, under the given facts, challenge the claim," the insured can recoup attorneys' fees. *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 74 N.Y.S.3d 469, 474 (N.Y. Sup. Ct., N.Y. Cnty. 2018), *rev'd on other grounds*, 92 N.Y.S.3d 231 (N.Y. App. Div., 1st Dep't 2019); *Sukup v. State*, 19 N.Y.2d 519, 522 (1967).

The Zichermans have made a showing that State Farm had no arguable basis for challenging their claims. They allege that State Farm processed their claim in bad faith in order to pressure them to settle for less than the value of the covered damage to their home. (Compl. at ¶¶ 20, 25-27, 30, 32-33.) An independent third party assessed that the water had caused over $680,000 in damage and State Farm paid out less than half of that amount. (*Id.* at ¶¶ 8, 33.) At this stage in proceedings, where all of the Zichermans' allegations are taken as true, there is nothing in the record to refute the Zichermans' independent assessment of the extent of the damages. Because no reasonable carrier would pay half the value of a valid claim, State Farm's motion to strike the claim for attorneys' fees is DENIED.

### C. Punitive Damages

Punitive damages are not normally available for ordinary breach of contract. *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994). Punitive damages are only recoverable to correct a public wrong, when the harmful conduct is aimed at the public. *Id.* In order to plead entitlement to punitive damages

for a breach of contract under New York law, a plaintiff's allegations must satisfy the following: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be . . . egregious [in] nature . . .; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *NYU*, 87 N.Y.2d at 316 (hereinafter "*NYU* factors"). Punitive damages are available for morally culpable conduct in order to both punish the behavior but also to deter future conduct. *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 179 N.E.2d 497 (1961). The four factors are addressed in turn.

1. Independent tort

The Zichermans argue that State Farm's breach of the covenant of good faith and fair dealing entitles them to punitive damages. Whether New York law allows the breach of the covenant of good faith and fair dealing to be the basis for punitive damages is unclear. On the one hand, it is clear that under New York law, a violation of the breach of the covenant of good faith and fair dealing is a breach of the underlying contract. *See, e.g.*, *J. Kokolakis Contracting Corp. v. Evolution Piping Corp.*, 998 N.Y.S.2d 788, 791 (N.Y. Sup. 2014); *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). The Zichermans do not dispute this. (*See* Pl. Mem. Opp. Mot. to Dismiss (Dkt. 11) at 1.) And punitive damages require the conduct be actionable as an independent tort. *See, e.g.*, *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 360 (2020); *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 355 (S.D.N.Y. 2021). On the other hand, New York courts have repeatedly allowed claims for punitive damages to go forward based on a breach of the covenant of good faith and fair dealing. *See, e.g.*, *25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.*, 40 N.Y.S.3d 469, 471 (2016); *Perlbinder v. Vigilant Ins. Co.*, 190 A.D.3d 985, 141 N.Y.S.3d 141, 147 (2021); *Koffler v. Cincinnati Ins. Co.*, 78 Misc. 3d 1237(A), 187 N.Y.S.3d 922

(N.Y. Sup. Ct. 2023); *Barton v. Ne. Transp., Inc.*, No. 21-CV-326 (KMK), 2022 WL 203593, at *12 (S.D.N.Y. Jan. 24, 2022).

The court has jurisdiction over this case based on the diversity of the parties. (*See* Notice of Removal (Dkt. 1) at ¶ 3). Since *Erie*, federal courts have been required to follow state common law when hearing cases based on its diversity jurisdiction. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because New York law is unclear, the role of this court is to predict how a New York state court would decide the issue.

State Farm's briefing in support of their motion to dismiss does little to clarify the matter. State Farm's efforts to distinguish *25 Bay Terrace* and *Perlbinder* are unpersuasive. State Farm argues that because the conduct at issue in *25 Bay Terrace* was more egregious, it is not applicable. (Def. Reply (Dkt. 12) at 3-4, 10.) But in *25 Bay Terrace,* breach of the implied covenant of good faith was sufficient to plead punitive damages. 40 N.Y.S.3d at 471. The fact that the conduct was egregious goes to the second *NYU* factor, not the first, and State Farm provides no explanation for the seeming disconnect between the first *NYU* factor and New York courts' acceptance of the breach of the implied covenant of good faith as sufficient to plead punitive damages. State Farm's attempt to distinguish *Perlbinder* by claiming that breach of the implied covenant of good faith can only provide for punitive damages when alleged with violations of the General Business Law § 349 similarly misses the point and fails to elucidate the issue. (Def. Reply at 10.)

Because New York courts have allowed the violation of the covenant of good faith and fair dealing to be the basis for a punitive damages claim, the Zichermans satisfy this factor.

2. Egregious nature

In order to determine whether tortious conduct rises to the level of egregious, New York courts have looked to the factors outlined

in *Walker*. *See Rocanova*, 83 N.Y.2d at 613 (citing *Walker*, 10 N.Y.2d at 404-05). The *Walker* court focused on the role of punitive damages in deterring future misconduct. Deterrence requires forethought, so "those who deliberately and cooly engage in a far-flung fraudulent scheme, systematically conducted for profit" are more likely to alter their behavior in response to the risk of increased damages. *Walker*, 10 N.Y.2d at 406. Because of inconsistent enforcement, "[a]n occasional award of compensatory damages against such parties would have little deterrent effect." *Id.* If required to pay only compensatory damages, the defendant would simply have to fulfill the contract and, in the worst case, pay the plaintiff what they were owed from the beginning. It is in these cases, according to the *Walker* court, that punitive damages are most likely to effectively deter wrongdoing.

In the present case, the Zichermans allege that State Farm exerted undue pressure to coerce insureds into settling for less than the value of the claim. (Compl. at ¶¶ 20, 27, 30, 33, 42.) The analysis from *Walker* is on point. If an insurer is only ever required to pay compensatory damages even for valid claims, there is no incentive to pay out claims before the commencement of litigation. Even if every insured won the full value of their claim, State Farm would still have succeeded in deferring cash outflows.[3] In the Zichermans' case, State Farm has avoided paying out more than $300,000 for more than two and a half years. (*Id.* at ¶¶ 4, 33.)

And of course, not every party will see litigation to completion. Litigation can be ploddingly slow and prohibitively costly. The Zichermans have been waiting for what they claim they are rightly owed under the policy for over two and a half years. (*Id.*) Insureds filing a claim almost definitionally are facing a financial shock; in at least some cases, if faced with the prospect of waiting

[3] Requiring payment of pre- and post-judgment interest, as the Zichermans seek, can partially ameliorate this. (Compl. at ECF 8 (Prayer for Relief).)

three years for a complete payout, they will settle for less than the amount of the claim in order to expedite the payment.

The Zichermans allege a scheme in which an insurer pressures insureds into settling in order to reduce required payouts. Therefore, based on the *Walker* factors, the Zichermans properly allege that State Farm's conduct is egregious in nature.

3. Directed at plaintiff

The Zichermans adequately allege that State Farm's egregious conduct is directed at the plaintiff. They claim that they had an insurance policy with State Farm that covered the water damage in question and that State Farm has not paid out the loss in full. (*Id.* at ¶¶ 4-5, 33.) They allege that State Farm processed their claim in bad faith, giving an artificially low offer to try to extract a settlement, and forcing the Zichermans to bring suit to enforce their contract. (*Id.* at ¶¶ 22, 31-33, 42.) The Zichermans properly allege direct injury from State Farm.

4. Directed at the public

Because punitive damages are only appropriate when the defendant is alleged to have harmed the public broadly, plaintiffs must show a pattern or practice of similar behavior. Beyond noting the definition of "unfair claim settlement practices" in New York Insurance Law § 2601, the Zichermans allege no conduct directed towards the public more generally. (*See generally id.*) The Zichermans therefore fail to properly state a claim for punitive damages, and the motion to dismiss the claim for punitive damages is GRANTED without prejudice.

While the Zichermans do not adequately allege that the egregious conduct was directed at the public, they are correct in noting that Insurance Law § 2601 is relevant for punitive damages claims. Because § 2601 does not create an independent cause of action, State Farm moves to strike it from the Complaint.

(Def. Mem. Law (Dkt. 10) at 5.) But State Farm, in attempting to rewrite the Zichermans' Complaint, misunderstands how § 2601 interacts with claims for punitive damages. In *Belco*, the court explained that § 2601 "dovetails with [the common-law right to punitive damages] nicely, and seems rather designed to complement and effectuate it." *Belco Petroleum Corp. v. AIG Oil Rig, Inc.*, 565 N.Y.S.2d 776, 780-81 (1991). § 2601 creates an administrative process by which a public official investigates alleged wrongdoing on the part of insurers. *See* N.Y. Ins. Law § 2601. Because proving entitlement to punitive damages requires showing that the harm is aimed at the public generally, many claims are dismissed because of the difficulty in gathering such proof. *Id.* With the regulatory regime created under N.Y. Ins. Law § 2601, "an insured aggrieved by an unfair claim settlement practice can take his grievance to the Superintendent of Insurance; if the grievance has merit, the Superintendent will presumably take it up and investigate; the insured, be he of modest means or substantial, should then be able to use the results of that investigation in pressing a claim for punitive damages." *Id.* The administrative process that § 2601 creates means that the law is relevant for pleading punitive damages.

Because State Farm moves to dismiss a claim that the Zichermans did not bring, the motion to strike reference to New York Insurance Law § 2601 in the Complaint is DENIED.

## IV. CONCLUSION

For the reasons stated above, State Farm's Motion to Dismiss is DENIED in part and GRANTED in part. State Farm's Motion to Dismiss is DENIED with respect to the Zichermans' claim of breach of the covenant of good faith and fair dealing and entitlement to consequential damages and attorneys' fees. Defendant's Motion to Dismiss the Zichermans' claim for punitive damages is GRANTED without prejudice with leave to amend.

SO ORDERED.

Dated: Brooklyn, New York
October 12, 2023

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge